UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| PATRICIA A. P.,[1]<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY,[2]<br>Commissioner of Social Security,<br><br>Defendant. | CASE NO. 3:23-CV-00240-MGG |

**OPINION AND ORDER**

This matter is before the Court for judicial review of a final decision of the defendant Commissioner ("Commissioner") of Social Security Administration ("SSA") denying the application of the Plaintiff Patricia A. P. ("Ms. P") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Section 405(g) of the Act provides, *inter alia*, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the finding and decision complained are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." Additionally, here, this Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Martin O'Malley was sworn into the office of Commissioner of Social Security on December 20, 2023, and he is substituted as Defendant is his official capacity as Commissioner.

I. **STANDARD OF REVIEW**

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months…" 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is not sufficient for a plaintiff to demonstrate that an impairment exists. Rather, the plaintiff must establish that the impairment is severe enough to prevent him from engaging in substantial gainful activity. *Gotshaw v. Ribicoff,* 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 945 (1963), *Garcia v. Califano,* 463 F.Supp. 1098 (N.D. Ill. 1979). Thus, the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson,* 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen,* 425 F.2d 20 (7th 1970).

The court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The court must uphold the decision of the Administrative Law Judge ("ALJ") so long as it is supported by substantial evidence. *Thomas v. Colvin,* 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Although "the threshold for such evidentiary sufficiency is not high," substantial evidence still requires "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). It means

2

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (internal citation and quotation marks omitted).

However, the deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 708-09 (7th Cir. 2013). Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

3

When reviewing the Commissioner's findings under Section 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). If, however, an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## II.   OVERVIEW OF THE CASE

In the present matter, Ms. P applied for DIB on January 10, 2020, and for SSI on July 21, 2020. In both applications, Ms. P alleged a disability onset date of August 1, 2019. Ms. P's applications were denied initially on October 16, 2020, and upon reconsideration on July 14, 2021. After a hearing on June 29, 2022, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.

2. The claimant has not engaged in substantial gainful activity since August 1, 2019, the alleged onset date (20 CFR 404.1571 *et. seq.*, and 416.971 *et. seq.*).

3. The claimant has the following severe impairments: coronary artery disease status post stents, remote acute myocardial infarction and quadruple bypass, depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting for 6-hours, standing for 6-hours, walking for 6-hours and push/pull the same as lift and carry. She is limited to occasional climbing [of] ramps and stairs, no climbing of ladders, ropes or scaffolds, and she is limited to frequent stooping, kneeling, crouching, and crawling. There will be no work at unprotected heights and occasionally in extreme cold or heat. She is limited to simple, routine and repetitive tasks not at production pace. She is limited to occasional interaction with the public and occasional changes in tasks or demands.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 11, 1970 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).[3]

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[DE 7, at 32 – 46]. Based on the above findings, the ALJ rendered an unfavorable decision on July 25, 2022 [*id.* at 46], which led to the present appeal.

### III. LEGAL ANALYSIS

Plaintiff filed her opening brief on August 29, 2023. [DE 10]. On November 3, 2023, the defendant filed a memorandum in support of the Commissioner's decision [DE 15], to which Plaintiff replied on November 17, 2023. [DE 16]. Upon full review of the record in this cause and for the reasons discussed below, the decision of the Commissioner should be reversed and remanded.

---

[3] Based on the testimony of the vocational expert, Ms. P would be able to perform the requirements of the following representative occupations: light unskilled retail marker (DOT# 209.587-034) with 225,000 jobs nationally, routing clerk (DOT# 222.687-022) with 125,000 jobs nationally, and packer (DOT# 559.687-074) with 165,000 jobs nationally. [DE 7, at 46].

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen,* 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987). The five-step inquiry under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his residual functional capacity (RFC)[4]; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at every step except the fifth. *Clifford*, 227 F.3d at 868.

In support of remand, Ms. P argues that the ALJ erred when he rejected the medical opinion of treating physicians and state agency consultants, and instead interposed his lay opinion. [DE 10, at 12-17]. With respect to the first argument, Plaintiff contends the ALJ impermissibly failed to properly evaluate the opinion of Caitlyn Zappetillo, LMHC.[5] [*Id.*]. In his decision, the ALJ was "unpersuaded" by the opinion of LMHC Zappetillo. [DE 7, at 43]. Specifically, the ALJ considered and found

---

[4] A claimant's residual functional capacity or RFC is "an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citations omitted).
[5] LMHC is an abbreviation for Licensed Mental Health Counselor. To qualify as an LMHC In Indiana, an individual must obtain a master or doctorate degree in an area of mental health counseling, complete 1,000 hours of supervised clinical experience, complete 3,000 hours of post-graduate clinical experience over a two-year period and pass the National Clinical Mental Health Counselor Examination. See, Indiana LMHC Application Instructions at www.in.gov/pla/files/LMHC_by_Exam_Application_ Instructions_2015.docx.

unpersuasive LMHC Zappettillo's opinion that Ms. P would be off task 25% or more of the workday and absent from work 4 or more days a month. [*Id*.] In drawing this conclusion, the ALJ noted that,

> Ms. Zappetillo did not provide adequate support for such severe restrictions including her recent provider notes in Exhibit C19F that showed the claimant having mood stability with medication adjustments, as well as other evidence including an April 2022 mental status exam showing unremarkable mental status findings with evidence of a calm appearance, intact memory, good concentration and a stable mood in Exhibit C19F, and recent provider notes showing improvement of depression with prescribed remedies in Exhibit C21F. The claimant's daily activity level including care of pets, meal preparation, light household cleaning, driving, going out alone, counting change, and talking on the phone was inconsistent with such extreme limitations.

[*Id*.]. The ALJ also found unpersuasive Dr. Alderink's opinion that Ms. P was disabled due to chronic conditions of type 2 diabetes, mellitus, hypertension, coronary artery disease, PTSD, major depression, anxiety, and inability to work for quite some time. [*Id*.]. The ALJ determined that Dr. Alderink's opinion was not supported by medical evidence and was inconsistent with the medical findings of Dr. Villareal. [*Id*.]. The ALJ was persuaded by the medical opinions of consultive physician Dr. Villareal [*id*. at 42], and agency consultants Drs. Corcoran and Whitley concerning Mr. P's physical condition [*id*. at 43-44]. However, the ALJ was unpersuaded by the medical opinions of agency consultants Drs. Gange and Larsen that Ms. P had non-severe mental impairments and no more than mild paragraph B criteria. [*Id*. at 44]. The ALJ determined that the opinions of Dr. Gange and Larsen were unpersuasive because they did not have access to other evidence that showed Ms. P had "greater mental issues." [*Id*.]. Specifically, this evidence included:

8

> Inpatient psychiatric treatment for suicidal thoughts in Exhibit C17F, therapy records in C19F showing treatment for major depressive disorder with a rule in/out for PTSD, recent provider notes showing treatment for depression with prescribed remedies in Exhibit C21F, and the claimant's statements at the hearing [about] the severity of her symptoms with memory, anxiety, attention, social isolative tendencies, melt downs, and suicidal thoughts.

[*Id*.]. The ALJ concluded that "neither the objective evidence of record or the claimant's own statements and activities supports a conclusion that she is unable to perform any substantial gainful activity."

An ALJ must rely on medical evidence at every part of the five-step inquiry. For instance, even before the RFC, an ALJ's determination as to whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on that issue. *Barnett v. Barnhart,* 381 F.3d 664, 670 (7th Cir. 2004)(citing 20 C.F.R. § 404.1526(b): "Medical equivalence must be based on medical findings....[w]e will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence."). *See also,* S.S.R. 96–6P at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), *reinstating* S.S.R. 83–19.

As such, it is well established that "an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford,* 227 F.3d at 870. Likewise, "[an ALJ] may not "play doctor" by using his

9

own lay opinions to fill evidentiary gaps in the record," *Chase v. Astrue,* 458 F.App'x 553, 557 (7th Cir. 2012), and may not substitute his lay opinion for all other medical sources in the record. *Kara v. Kijakazi,* No. 20-CV-0344-BHL, 2022 WL 4245022, at *2 (E.D. Wis. Sept. 15, 2022). Furthermore, "ALJ's are not permitted to construct a 'middle ground' [RFC] without a proper medical basis." *Norris v. Astrue,* 776 F.Supp.2d 616, 637 (N.D. Ill. 2001). In fact, an ALJ creates reversible error when he engages in a series of speculative independent medical findings that are untethered to professional medical opinion or scrutiny. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018)("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves").

In January 2017, the SSA adopted new rules for evaluating medical opinion evidence relative to claims filed after March 27, 2017. 82 F.R. 5844, 5869 (1-18-2017). Under the new regulations, "the opinions of treating physicians no longer receive controlling weight." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022)(citing 20 CFR 416.920c); see also 20 CFR 404.1520c(a)("[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)…") Under the current regulations, the ALJ must consider the following factors: (1) Supportability; Consistency; (3) Relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of treatment relationship, extent of the treatment relationship, and examining relationship; (4) Specialization; and other factors. 20 CFR 404.1520c(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 CFR

404.1520c(b)(2), 416.920c(b)(2). The new regulations eliminate any hierarchy among medical sources, deference to specific medical opinions, and assigning weight to medical opinions, but the ALJ must still articulate "how [he] considered the medical opinions and prior administrative medical findings in [the]claim" and "how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record ." 20 CFR 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

An ALJ is not required to adopt a specific medical opinion in crafting an RFC. *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021). However, by not adopting any medical opinion, an ALJ can create an evidentiary deficit. *Id. see also Suide v. Astrue*, 371 Fed. Appx. 684, 689-90 (7th Cir. 2010) (lack of reliance on any physician opinion evidence created an evidentiary deficit); *Pereida v. Saul*, No. 220CV00107RLMSLC, 2021 WL 327517 (N.D. Ind. Jan. 14, 2021), *report and recommendation adopted,* No. 2:20-CV-107 RLM-SLC, 2021 WL 327397 (N.D. Ind. Feb. 1, 2021) ("The ALJ did not provide evidence to explain how he came to the RFC limitations, and the creation of such middle ground without medical evidence to support his decision requires remand").

Yet, this is precisely what the ALJ did here – he created an evidentiary deficit by fashioning an RFC only supported by his lay interpretation of medical findings because he had rejected all relevant medical opinions of Ms. P's mental condition as unpersuasive. In essence, by rejecting the countervailing medical opinions of LMHC Zappetillo that Ms. P was severely restricted and the opinions of Drs. Gange and Larsen that Ms. P had non-severe mental impairments, the ALJ constructed a "middle ground"

RFC without a proper medical foundation. As such, the ALJ's consideration of the "medical evidence" was tantamount to playing doctor and resulted in a compromised RFC based on his lay medical opinion. Based on this legal error, remand is required as the ALJ "failed to construct the requisite accurate and logical bridge from the evidence to the ALJ's 'middle ground' physical RFC." *Marianne T. v. Saul*, No. 19 C 6171, 2021 WL 1088322, at *4 U.S. Dist. LEXIS 52725 at *13 (N.D. Ill. Mar. 22, 2021).

On remand, to avoid an evidentiary deficit, the ALJ should first analyze, in detail, whether each medical expert's opinion of Ms. P's physical and mental limitations is persuasive or unpersuasive. This analysis should be tied to the factors outlined in 20 CFR 404.1520c, and should describe in the requisite detail how the other portions of the record either conflict with or support each expert's opinion and how the opinion is consistent or inconsistent with expert's records. After completing this detailed analysis, if the ALJ still determines that these medical expert opinions are all generally unpersuasive, then the ALJ must fill in the "evidentiary deficit either by seeking further information from [the medical experts] or [by] obtaining the opinions of [another] independent examining physician or medical expert." *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012); *see also Barnett*, 381 F.3d at 669 (where an ALJ was concerned with the lack of support for a long-term treating physician's opinion, the ALJ should have contacted the doctor for clarification or sought other expert medical opinions, if necessary). Here, the ALJ did not seek clarification from the treating physicians or the agency consultants, and/or did not consult with other medical experts before rendering his decision. This left an unresolved evidentiary deficit at the core of the ALJ's decision,

12

which was not supported by substantial evidence. *Stephanie Z. v. Kijakazi,* No. 20 CV 5808, 2023 WL 2572429, at *4 (N.D. Ill. Mar. 20, 2023)(citing *Ana M.A.A. v. Kijakazi*, 2021 WL 3930103, at *2 (N.D. Ill. 2021)).

For the foregoing reasons, the Courts finds that this matter must be remanded to the Commissioner for further proceedings consistent with the Order.

## IV.  CONCLUSION

For the above reasons, the case is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C § 405(g).

**SO ORDERED** this 26th day of March 2024.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge